Mr. Gibbs, good morning. May it please the Court. My name is Robert Gibbs for Petitioner Jose Luis Orozco-Zacarias. This is an unusual case for this Court. I think it's one of the first ones that have come here. It involves a combined review of two strands of administrative appellate decision making. That, in other words, they saw application under the amnesty program and the amnesty program. And I would like to ask you, Mr. Gibbs, what do you make of that? If we, if you were right on the SAW prong, that is, that the administrative record included material which wasn't considered in denying the SAW application, doesn't that necessarily moot any dispute? I mean, that was really our suggestion. By doing that, by remanding the case to the LEU to take a look at this missing evidence and sort that out, sort out the questions about that, it would moot the whole dispute about cancellation and the judicial review provisions and the liberty interest and due process, all these big questions that are very difficult and time-consuming for everybody to deal with. But we might get them later. Yeah, that's always possible. I did want to point out that during the amnesty period, which was an application period in 87, 88, May of 87 to May of 88, the Ninth Circuit's handling of pending petitions for review, say, on a suspension application that had already got there, was to put those cases on hold while the Circuit waited to see what happened in the amnesty application process. And that's really what we think this Court should do here today. You know, there are many, there are several main issues in this case, and I'm not sure which are the most important for the Court. Let's start with the SAW issue. All right. Let's focus on that. I think that's our strongest case because it's clear that the applicant timely submitted the requested additional information, but for some reason it was misplaced at Lincoln for over nine months and not forwarded to the LAU for its decision-making until several days after the decision had been made. The government, I mean, I don't think there's much question about what the legal standard is here. If the government doesn't consider something that's in the administrative record, well, that's the end of that. But the government says, all right, fine, but look at it. Sure. And it isn't worth the powder to blow it up with. So what is your response to that? Well, we, it took us some effort to sort all this stuff out, too, because when we first got into this case, we, the applicant didn't have the file. He didn't have the records. He had some sketchy things. A piece of paper isn't worth anything. Well, first of all, it's by his contractor. SOTO affidavit. The SOTO affidavit, yes. The one that the service has agreed should have been or was submitted, which I refer to as SOTO I, and then the Respondent found SOTO II in his files, which we've, submitted some supportive declarations on how that came to be, which, of course, could be conceded. But what's your response to Judge Reimer's point on the merits of that affidavit itself? Sure. Well, the affidavit itself is a sworn declaration. It's, it says that Mr. Orozco worked in thinning plums. The guy's spelling isn't very good, but then most contractors, their level of education isn't much higher than the applicants or the farm workers. It says the time frame in which he worked, and it says the pay. It's, as I said, signed and notarized. I think perhaps useful in this consideration is that if the LIU had looked at this and said, gee, there's some problem about this, they could have done two things. They could have said to Orozco, look, there's some problem. We don't really think this is very solid. Can you get us some more detail on it? That was their usual practice then. He could have then, as we've shown with this other declaration, SOTO II, gotten that additional information. He thinks he submitted that. It's not in the services file, but we're not sure whether they lost that one as well. But that shows further information about the dates that he worked, which is often an issue of question by the LIU or the RPFs. And it also, I think, of note is that there's a photograph of the applicant attached, and there's a new signature across the photograph from Mr. SOTO to show that he's confirming and corroborating these additional pieces of information that were added to the declaration. The second declaration that the affidavit gets them over the required number of days? Yes, it is. And the thing that, you know, if it were a declaration where it were tinkered with in the sense that things were crossed out or there were contradictions between SOTO I and SOTO II or between the SOTO declarations and the other farm work proof, then there would be an issue. But there's no contradiction between SOTO I and SOTO II. SOTO II shows an elaboration, a further explanation on exactly the kinds of things that the LIU would typically ask for further information on. So we think that's an appropriate question. This Court doesn't have to deal with whether that's appropriate for consideration here. But for the LIU on remand, that would be certainly an appropriate thing to consider. All right. Let's hear from the government, then. Thank you very much. Mr. McLaughlin, we saw you earlier this week. Good morning. It's good to be back. May it please the Court. I am Andrew McLaughlin. I represent the Respondent Attorney General of the United States in this case. With respect to the SAW legalization issue, as the Court has observed, and there's no dispute that the document was received by the government and wasn't considered by the LIU. There is a distinction I would draw to Judge Rimer's question. The document is not in the administrative record that was before the LIU. It was, and therefore the LIU's decision in that respect is not an abuse of discretion. It didn't have the document. It couldn't have considered the document. However, then you have to consider whether there is a process defect and therefore due process issue. And from there, you get to the issue of whether there is in fact prejudice. The government's position on this, and there's a number of different permutations to all of this, but the fundamental aspects of the government's position with respect to the document itself is, one, it says nothing about man hours. But before you get to that, Counsel, does the government concede, then, that the LIU should have considered the SOTO declaration? The document should have reached the LIU prior to its decision. Mr. Orozco did everything that he was supposed to do, and the LIU simply, there was some defect in the way that you were sending things around, and it didn't get the document and consider it. With respect to submitting documentation, Mr. Orozco did everything he was supposed to do. But now you're arguing, then, that the failure to consider it is nevertheless harmless error because we can examine the substance of the document. Why isn't that an LIU issue in the first instance? Are you asking? Why shouldn't the LIU consider the SOTO declaration in the first instance? The LIU did not have the SOTO declaration. Right. Why shouldn't we just simply send this back to the LIU and let the LIU decide all of this in the first instance instead of us deciding that it's harmless error because we don't believe the SOTO declaration? Your Honor, the Court could do that if the Petitioner had demonstrated a due process violation here. Under this Court's law, in order to demonstrate a due process violation, the Petitioner has to demonstrate prejudice. And there's two reasons why there's not. The first is there are no man hours in this document. This document changes nothing about the case and couldn't possibly change anything about the case, irrespective of the dates. There's no mention of the man hours that were conducted. Secondly, and if you look at the the... Through both documents, there's an Affidavit 1 and Affidavit 2. The second document, which no one believes was ever submitted by, that is, the fact that the first document is in the pile of paper that the INS had, indicates that that is the document that Mr. SOTO, in fact, that Mr. Orozco, in fact, submitted. There's no possibility that the LIU could have had that document. That's the second document. Therefore, it's not relevant to either abuse of discretion or... No. In terms of our review, if the second document does deal with man hours... The second document is not part of the record before this Court. It's true. But you're arguing prejudice. And if it turns out, contrary to your argument, that there is something in the second document that does deal with man hours, then you have a problem with your prejudice argument. It's actually man days, not man hours. Man days. The second document has a couple of difficulties. It also does not specifically address the number of man days that Mr. Orozco worked. It talks about days, but it doesn't necessarily get you all the way there. The point here is that the LIU, in deciding the way it did, and the INS in failing to bring the document forward, did not violate due process because there was no prejudice in them not doing so, because the document itself would not have changed the result. And there's two. The first reason is the man hours. The second reason, which also applies to the second document, is the second document doesn't meet the criteria for looking at the evidence in the first place. Well, that's not to argue that he hasn't been provided the process that is due because he's not going to win. It's not the way that we ordinarily calculate a due process violation. We don't usually jump to the end and say, well, it doesn't matter. He's not going to win anyway. So there was no problem that the district court didn't even read the complaint before it dismissed it. The question is not whether the – this is more akin to the clerk not giving a document to the court than it is to the court not considering it. Right, right. I understand. But the way that you've argued this is you've argued that there's no due process violation because there's no foul. There's no harm, no foul here because he can't possibly win at the end. Your Honor, that doesn't mean that there's no due – that he hasn't been provided the process that's due, that we haven't violated the due process clause. Your Honor, I believe it does, based on the law of this Court. There has to be a procedural defect and there has to be substantive prejudice. Coleman R. specifically says that. I agree with you that a due process violation has to have prejudice. Would you just spell out again the second reason, that you were just getting to your second reason? There's a long list of things. It's in the regulations at 8 CFR 210.3d that it's such an affidavit by a coworker or a supervisor must contain. It has to say what his relationship is to the alien. It has to be – it has to give his address. It has to give the locations of the work that was done. It has to have the photograph. The photograph has to be signed. All of those things are not present in this document. Now, theoretically, if Mr. Orozco had presented this document in a timely manner back in February of 1989 to the LEU the first time or the second time or the third time that the regional processing facility asked for that, they might have gone back to him and said, okay, can you fill in some of these blanks? Or even tracked down Mr. Soto and asked him to complete the document correctly. But as a practical matter, by the time it got to the appellate level, and if this document had reached the LEU in this form, the LEU would not have used its discretion in saying, this form doesn't meet our standards, you lose. It is not an abuse of discretion for the LEU to say that. That's correct. But what if the LEU had valued the document? I mean, Mr. McLaughlin, you're asking us to take your word for it that the LEU would reject the Soto declaration as being adequate proof. Well, I can say that with some certainty based on their rationale in analyzing the other documents that were on the record. First, they looked for specific mandates. You might think that they would be behaving inconsistently if they did that. But you're asking us to make that judgment without having the benefit of their views. You're correct, Your Honor. In this case, based on the total absence of any value in the document and the total lack of qualification of the document in the first place, I believe it's fair for the Court to say, look, there's simply no harm that this document didn't reach. Mr. McLaughlin, if we thought they should go back to the LEU, what does that do to the cancellation of removal? Your Honor, I actually differ from the opinion expressed by my colleague. Because the relief that's granted through the 210 process is only a temporary residence authorization, he would be authorized temporary residence in the United States but yet could be subsequently removed for other reasons. Now, it's hard to say exactly how this would spin out, but it doesn't necessarily remove the fact that the alien is not legally present in the United States and may be removable and therefore cancellation may come into play. But in any event, that could start the process all over again after? That is correct, Your Honor. Would he have a mechanism for appealing subsequently a denial by the LEU? Only if ---- Let's suppose that we send it back to the LEU, that we affirm the order to remove him, and LEU denies his request and he wishes to appeal that. Does he have any mechanism for appealing it? Doesn't his appeal have to attach to an order of deportation? I believe you're correct, Your Honor. I can't agree with that. I think he would have no mechanism for appealing that order. I believe you're correct, Your Honor. Is it impossible for us to do what Mr. Gibbs suggested, which is to rule the order of deportation or recancellation of removal moved pending the resolution of his petition? That then would provide him with a mechanism for appealing the order following a proper providing of process by the LEU. I believe mootness is probably the wrong mechanism. I can't tell you what I think would be the right one. If you say that it's ---- Well, if he has a pending SAW application, he's been in legal status. So any order that says otherwise is moot, isn't it? I would have to go back and look at the basis of the order. But if I am correct that the basis of the order was that he was here not in a legal status, you are correct. If it's not moot, it's at least premature. Yes, Your Honor. Thank you, counsel. Your time has expired. Thank you. Mr. Gibbs, you have some retained time. Yeah. On the prejudice question, the case law in this circuit is that prejudice is shown if you can show that it may have affected the outcome. We think the document may have affected the outcome, may have prejudiced him. One or SOTO II or both? I think one is sufficient and two is even better, it demonstrates. As to the mandates question ---- Are you open to get SOTO II somehow into the process? That's what we would do, yes. Well, I don't mean now. I mean at the time. Oh. Had there been no mess-up. Yeah. If we ---- The only thing that would have been before the LAU is SOTO I, and let's suppose that gets nowhere. Yeah. What would you have done about SOTO II? If I had been involved, you know, the odd thing about the regulations, and Mr. McLaughlin and I had a discussion about this, but as I read the regulations, there's no such thing, at least at the time of this decision, that allowed for a motion to reopen. As I recall the regulations in effect in 1990, it said there is no motion to reopen. It says that the LAU has a sui sponte reopen, and so there was a developed law, I think in the BIA or LAU case law, that you can make a suggestion of sui sponte reopening. So that could have been done if he had come to me. I could have said, well, hey, you missed this thing, and ---- Would you have had any shot at reopening? You know, I haven't had one of those succeed. Okay. Not one. So then what exactly is the prejudice? Well, the prejudice, well, just because they don't reopen doesn't mean that their decision is proper, if they have been properly considered that. So what exactly is the prejudice? The prejudice is this. The other thing you need to understand about the SAW application process is that the burden on the respondent is to show by a matter of just and reasonable inference that he did the farm work. These documents show that. He doesn't have to show by a preponderance that he did X. If he shows by just and reasonable inference that he did this requisite farm work, then the burden shifts to the government to rebut the inference. That's in the statute, and that's what the UFW settlement was about, the failure of the service to follow that provision. That's why his case was in the class that was remanded. That's why I think there's prejudice here, because if you took this evidence, he proves the just and reasonable inference, I don't care if the LIU gets it wrong a second time, it's still wrong, and this court on review ultimately here 10 years later can straighten that out. But that's why I think there's prejudice. In terms of the mandates thing, the regulation and the statute are clear that mandates is defined as one day of work in a day. And the evidence is in the SOTA declarations, he worked from X date to Y date. It's more than sufficient, even if you figure he only worked four days a week during that time frame, as a matter of just and reasonable inference, to get him to the 90 days. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument in the United States v. Hamilton. Mr. Avery.
judges: O'scannlain, Rymer, Bybee